1  MILBERG LLP
   DAVID AZAR (SBN 218319)
2  dazar@milberg.com
   2850 Ocean Park Blvd. Suite 300
3  Santa Monica, CA 90405
   Telephone: (213) 617-1200
4  Facsimile:  (212) 868-1229
   Attorneys for Plaintiff and the Proposed Classes
5
   [Additional Counsel Listed on Signature Page]
6

7

8                     UNITED STATES DISTRICT COURT
9
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11 | KIMBERLY HEINES, individually and on behalf of all others similarly situated, | Case No. |

12 |                     Plaintiff, | **CLASS ACTION COMPLAINT FOR:** |

13 | v. | **1. Breach of Implied Contract** |

14 | | **2. Violation of the California Unfair Competition Law, Business & Professions Code § 17200, *et seq.*** |
15 | YAHOO! INC. |
                     Defendant.
16
17                                              **3. Negligence**

                                            **JURY TRIAL DEMAND**
18

19

20

21

22

23

24

25

26

27

28

Plaintiff Kimberly Heynes brings this Class Action Complaint against Yahoo! Inc., ("Yahoo" or "Defendant") on behalf of herself and all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Yahoo for its failure to secure its users' personally identifiable information ("PII") such as users' names, email addresses, telephone numbers, dates of birth, passwords and, in some cases, security questions and answers, which Yahoo collected from its users (collectively, "Private Information"). In addition Yahoo failed to provide timely, accurate, and adequate notice to Plaintiff and other Class members that their Private Information had been stolen. When users establish accounts at Yahoo, Yahoo electronically collects and stores this information, making it a treasure trove of for hackers who can use the information to profit and cause damage, as was done here, to consumers.

2. Beginning in late 2014, hackers stole copies of 500 million Yahoo users' Private Information (the "Data Breach"). While copied, Plaintiffs and other users' information remains in the possession of Yahoo. Yahoo announced it sustained the Data Breach two years later.

3. On September 22, 2016, Yahoo confirmed that a copy of certain user account information was stolen from its systems in late 2014. Yahoo conceded that pilfered Private Information included users' names, email addresses, telephone numbers, dates of birth, passwords and, in some cases, security questions and answers. Yahoo likewise stated that the stolen information did not include payment card data, or bank account information; as payment card data and bank account information were not stored in the system that its investigation had found to be affected. Yahoo further believes that the hacker is not currently in Yahoo's network.

4. At this early stage, it is unknown to Plaintiff whether Yahoo's description of the breadth of the Data Breach is accurate. However, given that two years passed before Yahoo discovered the Data Breach, Plaintiff is rightfully skeptical of Yahoo' s self-serving statements.

1      5.     On September 22, 2016, Yahoo gave notice to users whose Private Information
2  it knows (thus far) was compromised.

3      6.     Yahoo disregarded Plaintiffs and Class members' rights by intentionally,
4  willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure
5  that its data systems were protected, failing to take available steps to prevent and stop the
6  breach from ever happening, failing to promptly disclose the theft of the PII, and failing to
7  disclose to its users the material facts that it did not have adequate computer systems and
8  security practices to safeguard users' Private Information.  Plaintiff is informed and believes
9  that Plaintiffs and Class members' Private Information was improperly handled and stored, was
10  unencrypted or inadequately encrypted, and was not kept in accordance with applicable,
11  required, and appropriate cyber-security protocols, policies, and procedures.  As a result,
12  Plaintiffs and Class members' Private Information was compromised and stolen.  However, as
13  this same information remains stored in Yahoo's computer systems, Plaintiff and class
14  members have an interest in ensuring that their information is safe, and they should be entitled
15  to seek injunctive and other equitable relief, including independent oversight of Yahoo's
16  security systems.

17                    **PARTIES**

18      7.     Plaintiff, Kimberly Heines, is an individual and citizen of California. Plaintiff
19  has maintained a Yahoo email account since approximately 1999.  In February 2015, after the
20  breach occurred, but before it was announced, <u>Plaintiff was the victim of identity theft</u>: her
21  government benefits account was drained of funds. As a result, Plaintiff was unable to make
22  certain bill payments.  In addition, she received collection calls for bills that were not hers.

23      8.     Yahoo! Inc. is a Delaware corporation with its principle place of business in
24  Sunnyvale, California.  Yahoo is a technology company, primarily deriving its revenues by
25  connecting advertisers with target audiences through streamlined advertising technology.  It is a
26  guide to digital information discovery, focused on informing, connecting, and entertaining its
27  users through its search, communications, and digital content products.  It creates value for
28  advertisers with a streamlined, simple advertising technology stack that leverages Yahoo' s

data, content, and technology to connect advertisers with their target audiences. Advertisers can build their businesses through advertisements targeted to audiences on Yahoo's online properties and services ("Yahoo Properties") and a distribution network of third-party entities ("Affiliates") who integrate Yahoo's advertising offerings into their websites or other offerings ("Affiliate sites"). Yahoo's revenue is generated principally from display and search advertising.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed $5,000,000.00, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Yahoo, on the other, are citizens of different states.

10.     This Court has jurisdiction over Yahoo as it maintains its corporate headquarters in this District and for the following reasons: Yahoo makes decisions regarding overall corporate governance and management, including the security measures to protect its users' Private Information, in this District; it is authorized to conduct business throughout the United States, including California; and it advertises in a variety of media throughout the United States, including California. Via its business operations throughout the United States, Yahoo intentionally avails itself of the markets within this state to render the exercise of jurisdiction by this Court just and proper.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District and because Yahoo is headquartered in this District.

## FACTUAL BACKGROUND

**A.      Yahoo and Its Private Information Collection Practices**

12.     Yahoo's primary driver of engagement across its user offerings is its email service, Yahoo Mail. *See* Yahoo Inc., Form 10-K for 2015 at 6. Yahoo also offers a messaging service, Yahoo Messenger, as well as news, financial reporting, and sports content, and a

microblogging and social networking website, Tumblr.  *Id.* at 6-7.  To utilize these offerings, users must setup user account(s), which requires users to provide Yahoo with Private Information.

**B.      Consumers Rely on Yahoo's Private Information Security Practices**

13.     Yahoo maintains a privacy policy available on its website ("Privacy Policy").  It provides, among other things, that Yahoo is "committed to ensuring your information is protected and [it] applies safeguards in accordance with applicable law."[1]  The Privacy Policy further provides:

> **Yahoo collects personal information[2] when you register with Yahoo**, when you use Yahoo products or services, when you visit Yahoo pages or the pages of certain Yahoo partners, and when you enter promotions or sweepstakes.  Yahoo may combine information about you that we have with information we obtain from business partners or other companies.

> **When you register we ask for information such as your name, email address, birth date, gender, ZIP code, occupation, industry, and personal interests.  For some financial products and services we might also ask for your address, Social Security number, and information about your assets.**  When you register with Yahoo and sign in to our services, you are not anonymous to us.

> Yahoo collects information about your transactions with us and with some of our business partners, including information about your use of financial products and services that we offer.

> **Yahoo analyzes and stores all communications content, including email content from incoming and outgoing email.**

> **Yahoo automatically receives and records information from your computer and browser, including your IP address, Yahoo cookie information, software and hardware attributes, and the page you request.**

> Yahoo uses information for the following general purposes: to customize the advertising and content you see, fulfill your requests for products and services, improve our services, contact you, conduct research, and provide anonymous reporting for internal and external clients.

---

1 *See* Yahoo!, *Yahoo Privacy Center*, https://policies.yahoo.com/us/en/yahoo/privacy/index.htm (Aug. 30, 2016) (last visited November 7, 2016).

2 "Personal information is information about you that is personally identifiable like your name, address, email address, or phone number, and that is not otherwise publicly available." *Id.*

**Yahoo does not rent, sell, or share personal information about you with other people or non-affiliated companies except to provide products or services you've requested, when we have your permission, or under the following circumstances:**

- We provide the information to trusted partners who work on behalf of or with Yahoo under confidentiality agreements.  These companies may use your personal information to help Yahoo communicate with you about offers from Yahoo and our marketing partners.  However, these companies do not have any independent right to share this information.

- We have a parent's permission to share the information if the user is a child under age 13.  *See* Children's Privacy & Family Accounts for more information about our privacy practices for children under 13.

- We respond to subpoenas, court orders, or legal process (such as law enforcement requests), or to establish or exercise our legal rights or defend against legal claims.

- We believe it is necessary to share information in order to investigate, prevent, or take action regarding illegal activities, suspected fraud, situations involving potential threats to the physical safety of any person, violations of Yahoo's terms of use, or as otherwise required by law.

- We transfer information about you if Yahoo is acquired by or merged with another company.  In this event, Yahoo will notify you before information about you is transferred and becomes subject to a different privacy policy.

**Yahoo displays targeted advertisements based on personal information.** Advertisers (including ad serving companies) may assume that people who interact with, view, or click targeted ads meet the targeting criteria—for example, women ages 18-24 from a particular geographic area.

- **Yahoo does not provide any personal information to the advertiser** when you interact with or view a targeted ad.  However, by interacting with or viewing an ad you are consenting to the possibility that the advertiser will make the assumption that you meet the targeting criteria used to display the ad.

- Yahoo advertisers include financial service providers (such as banks, insurance agents, stock brokers and mortgage lenders) and non-financial companies (such as stores, airlines, and software companies).

Yahoo works with vendors, partners, advertisers, and other service providers in different industries and categories of business.

**We limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs.**

5

1        **We have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you.**

14.    Thus, Yahoo collects and stores massive amounts of PII on its servers and utilizes this information to maximize its profits.

15.    Consumers place value in data privacy and security, and they consider it when making decisions regarding their online behavior, including their choice of email provider. Plaintiff would not have become a Yahoo user had she known that Yahoo does not take all necessary precautions to secure the personal data given to it by consumers.

16.    Yahoo failed to disclose its negligent and insufficient data security practices and consumers relied on or were misled by this omission into using Yahoo.

17.    Yahoo is no stranger to threats against its users' Private Information.  In 2012, over 400,000 unencrypted Yahoo usernames and passwords were stolen and posted on a public website.[3]  In 2013 Yahoo Japan was compromised, exposing 22 million Yahoo Japan email addresses.[4]

18.    Likewise the technology industry is rife with similar examples of hackers targeting users' PII, including the hacks at Adobe,[5] LinkedIn, eHarniony,[6] and Snapchat,[7] among many others, all of which pre-date the time frame Yahoo has identified regarding the Data Breach here, in late 2014.

---

[3]  *See, e.g.*, Charles Arthur, *Yahoo Voice Hack Leaks 450,000 Passwords*, THE GUARDIAN (July 12, 2012), *available at* https://www.theguardian.comitechnology/2012/jul/12/yahoo-voice-hack-attack-passwords-stolen; Chenda Ngak, *Yahoo Confirms Email Hack In Statement*, CBS NEWS (July 12, 2012), available at http://www.cbsnews.com/news/yahoo-confirms-email-hack-in-statement/.

[4]  Graham Cluley, *22 Million User Ids May Be In The Hands Of Hackers, After Yahoo Japan Security Breach*, NAKED SECURITY (May 20, 2013), available at https://nakedsecurity.sophos.com/2013/05/20/yahoo-japan-hacld; BBC Technology, *Millions Hit By Yahoo Japan Hack Attack*, BBC (May 20, 2013), available at http://www.bbc.com/news/technology-22594136.

[5]  *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014).

[6]  CBS News Staff, eHarmony Suffers Password Breach on Heels of LinkedIn, CBS News (June 7, 2012), available at http://www.cbsnews.com/news/eharmony-suffers-password-breach-on-heels-of-linkedin/.

[7]  Nancy Blair & Brett Molina, *Snapchat, Skype Have Security Breach*, USA Today (Jan. 2, 2014), available at http://www.usatoday.com/story/tech/2014/01/01/snapchat-user-names-leak/4277789/.

**C.      Stolen Private Information Is Valuable to Hackers and Thieves**

19.      It is well known and the subject of many media reports that PII data is highly coveted and a frequent target of hackers.  PII data is often easily taken because it may be less protected and regulated than payment card data.  Especially in the technology industry, the issue of data security and threats thereto, is well known, as noted above.  Several other online companies have experienced data breaches resulting in the disclosure of users' PII, and as identified earlier, a large number of technology companies were the targets of data breaches.  Despite well-publicized litigation and frequent public announcements of data breaches by retailers and technology companies, Yahoo opted to maintain an insufficient and inadequate system to protect the PII of Plaintiff and class members.

20.      Legitimate organizations and the criminal underground alike recognize the value of PII.  Otherwise, they wouldn't aggressively seek or pay for it.  For example, in "one of 2013's largest breaches . . . not only did hackers compromise the [card holder data] of three million users, they also took registration data from 38 million users."[8]  Similarly, in the Target data breach, in addition to PCI data pertaining to 40,000 credit and debit cards, hackers stole PII pertaining to 70,000 users.

21.      Biographical data is also highly sought after by data thieves.  "Increasingly, criminals are using biographical data gained from multiple sources to perpetrate more and larger thefts."  *Id.*  PII data has been stolen and sold by the criminal underground on many occasions in the past, and the accounts of theft and unauthorized access have been the subject of many media reports.  One form of identity theft, branded "synthetic identity theft," occurs when thieves create new identities by combining real and fake identifying information and then use those identities to open new accounts.  "This is where they'll take your Social Security number, my name and address, someone else's birthday and they will combine them into the equivalent of a bionic person," said Adam Levin, Chairman of IDT911, which helps businesses

---

[8]  Verizon 2014 PCI Compliance Report, available at <http://www.nocash.info.ro/wp-content/uploads/2014/02/ Verizonpci-report-2014.pdf> (hereafter "2014 Verizon Report"), at 54 (last visited Sept. 24, 2014).

recover from identity theft. Synthetic identity theft is harder to unravel than traditional identity theft, experts said: "It's tougher than even the toughest identity theft cases to deal with because they can't necessarily peg it to any one person."  In fact, the fraud might not be discovered until an account goes to collections and a collection agency researches the Social Security number.

22.    Unfortunately, and as is alleged below, despite all of this publicly available knowledge of the continued compromises of PII in the hands of third parties, such as technology companies, Yahoo's approach at maintaining the privacy of Plaintiffs and Class members' PII was lackadaisical, cavalier, reckless, or at the very least, negligent.

**D.    This Data Breach Will Result in Additional Identity Theft and Identify Fraud**

23.    Yahoo failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach.

24.    The ramifications of Yahoo's failure to keep Plaintiff's and Class members' data secure are severe.

25.    The information Yahoo compromised, including Plaintiff's identifying information is "as good as gold" to identity thieves, in the words of the Federal Trade Commission ("FTC").[9]  Identity theft occurs when someone uses another's personal identifying information, such as that person's name, address, credit card number, credit card expiration date, and other information, without permission, to commit fraud or other crimes.  The FTC estimates that as many as 10 million Americans have their identities stolen each year.

---

[9] FTC Interactive Toolkit, Fighting Back Against Identity Theft, available at http://www.dcsheriffnet/commtmity/documents/id-theft-tool-kit.pdf (last visited Sept. 24, 2014). Io FTC, Signs of Identity Theft, available at <http://www.consumer.ftc.gov/articles/ 0271-signs-identity-theft> (last visited Sept. 24, 2014).

26.     As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account [as occurred to Plaintiff here], run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[10]

27.     According to Javelin Strategy and Research, "1 in 4 notification recipients became a victim of identity fraud."" Nearly half (46%) of consumers with a breached debit card became fraud victims within the same year.

28.     Identity thieves can use personal information such as that of Plaintiff and Class members, which Yahoo failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund. Some of this activity may not come to light for years. The IRS paid out $43.6 billion in potentially fraudulent returns in 2012, and the IRS identified more than 2 9 million incidents of identity theft in 2013. The IRS described identity theft as the number one tax scam for 2014.

29.     Among other forms of fraud, identity thieves may get medical services using consumers' compromised personal information or commit any number of other frauds, such as obtaining a job, procuring housing, or even giving false information to police during an arrest.

30.     It is incorrect to assume that reimbursing a consumer for a financial loss due to fraud makes that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."[11] In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id.* at 11.

---

[10] *See* 2013 Identity Fraud Report: Data Breaches Becoming a Treasure Trove for Fraudsters, available at <www.javelinstrategy.com/brochure/ 276> (last visited Sept. 24, 2014) (the "2013 Identity Fraud Report").

[11] Victims of Identity Theft, 2012 (Dec. 2013) at 10, available at http://www.bjs.govicontent/pub/pdfivit12. pdf (last visited Sept. 24, 2014).

**E.      Annual monetary losses from identity theft are in the billions of dollars.**

31.      Javelin Strategy and Research reports that those losses increased to $21 billion in 2013.[12]

32.      There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used.  According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years.  As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[13]

33.      Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.  The Class is incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies.

**F.      Plaintiff and Class Members Suffered Damages**

34.      The Data Breach was a direct and proximate result of Yahoo's failure to properly safeguard and protect Plaintiffs and Class members' Private Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Yahoo's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

---

[12]  *See* 2013 Identity Fraud Report.

[13]  GAO, Report to Congressional Requesters, at p.33 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (emphases added) (last visited Sept. 24, 2014).

35.     Plaintiffs and Class members' PII is private and sensitive in nature and was left inadequately protected by Yahoo.  Yahoo did not obtain Plaintiff's and Class members' consent to disclose their PII to any other person as required by applicable law and industry standards.

36.     As a direct and proximate result of Yahoo's wrongful action and inaction and the resulting Data Breach, Plaintiff (as was addressed above) and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the Data Breach on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

37.     Yahoo's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs and Class members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

       a.     theft of their personal and financial information;

       b.     the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their personal information being placed in the hands of criminals and already misused via the sale of Plaintiffs and Class members' information on the Internet black market;

       c.     the untimely and inadequate notification of the Data Breach;

       d.     the improper disclosure of their Private Information;

       e.     loss of privacy;

       f.     ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

       g.     ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

11

h.    overpayments to Yahoo for products and services purchased during the Data Breach in that a portion of the price paid for such products and services by Plaintiffs and Class members to Yahoo was for the costs of reasonable and adequate safeguards and security measures that would protect users' Private Information, which Yahoo did not implement and, as a result, Plaintiff and Class members did not receive what they paid for and were overcharged by Yahoo; and

i.    deprivation of rights they possess under the California Unfair Competition Law (Cal. Bus. & Prof. Code §17200).

38.    While the Private Information of Plaintiff and members of the Class has been stolen, the same or a copy of the Private Information continues to be held by Yahoo.  Plaintiff and members of the Class have an undeniable interest in insuring that this information is secure, remains secure, and is not subject to further theft.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff seeks relief in her individual capacity and as representatives of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), (b)(3), and (c)(4), Plaintiff seeks certification of a Nationwide class and a California class.  The national class is initially defined as follows: all persons residing in the United States whose personal information was disclosed in the Data Breach affecting Yahoo in 2014 (the "Nationwide Class").

40.    Excluded from each of the above Classes are Yahoo, including any entity in which Yahoo has a controlling interest, is a parent or subsidiary, or which is controlled by Yahoo, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Yahoo.  Also excluded are the judges and court personnel in this case and any members of their immediate families.

41.    Numerosity. Fed. R. Civ. P. 23(a)(1).   The members of the Class are so numerous that the joinder of all members is impractical.  While the exact number of Class

members is unknown to Plaintiff at this time, Yahoo has acknowledged that the Personal Information of 500 million users was affected by the breach, including Plaintiff's.

42.     Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

a.     Whether Yahoo violated the California's Unfair Competition Law by failing to implement reasonable security procedures and practices;

b.     Whether Yahoo violated common and statutory law by failing to promptly notify class members their personal information had been compromised;

c.     Whether class members may obtain injunctive relief against Yahoo under California's privacy laws to require that it safeguard or destroy, rather than retain, the Private Information of Plaintiff and Class members;

d.     Which security procedures and which data-breach notification procedure should Yahoo be required to implement as part of any injunctive relief ordered by the Court;

e.     Whether Yahoo has an implied contractual obligation to use reasonable security measures;

f.     Whether Yahoo has complied with any implied contractual obligation to use reasonable security measures;

g.     What security measures, if any, must be implemented by Yahoo to comply with its implied contractual obligations;

h.     Whether Yahoo violated California's privacy laws in connection with the actions described here; and

i.     What the nature of the relief should be, including equitable relief, to which Plaintiff and the Class members are entitled.

43.     All members of the proposed Classes are readily ascertainable.  Yahoo has access to addresses and other contact information for millions of members of the Classes, which can be used for providing notice to many Class members.

44.     Typicality. Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of those of other Class members because Plaintiff's information, like that of every other class member, was misused and/or disclosed by Yahoo.

45.     Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including privacy litigation.

46.     Superiority of Class Action. Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

47.     Damages for any individual class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Yahoo's violations of law inflicting substantial damages in the aggregate would go un-remedied.

48.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Yahoo has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## COUNT I

### Breach of Implied Contract

(On Behalf of Plaintiff and the Nationwide and California Classes)

49.     Plaintiff incorporates the substantive allegations contained in Paragraphs 1 through 48.

50.     Yahoo solicited and invited Plaintiff and Class Members to use its services. Plaintiff and Class members accepted Yahoo's offers and created user accounts requiring the provision of Private Information with Yahoo during the period of the Data Breach.

51.     When Plaintiff and Class Members used Yahoo services and products, they provided their Private Information.  In so doing, Plaintiff and Class Members entered into implied contracts with Yahoo pursuant to which Yahoo agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised.

52.     Each use of a Yahoo service or product made by Plaintiff and Class Members was made pursuant to the mutually agreed-upon implied contract with Yahoo under which Yahoo agreed to safeguard and protect Plaintiffs and Class Members' Private Information and to timely and accurately notify them if such information was compromised or stolen.

53.     Plaintiff and Class Members would not have provided and entrusted their Private Information to Yahoo in the absence of the implied contract between them and Yahoo.

54.     Plaintiff and Class Members fully performed their obligations under the implied contracts with Yahoo.

55.     Yahoo breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect the Private Information of Plaintiff and Class Members and by failing to provide timely and accurate notice to them that their Private Information was compromised in and as a result of the Data Breach.

56.     As a direct and proximate result of Yahoo's breaches of the implied contracts between Yahoo and Plaintiff and Class Members, Plaintiff and Class Members sustained actual losses and damages as described in detail above.

## COUNT II

### Negligence

(On Behalf of Plaintiff and the Nationwide and California Classes)

57.   Plaintiff repeats and fully incorporates the allegations contained in paragraphs 1 through 48.

58.   Upon accepting and storing Plaintiffs and Class Members' Private Information in their respective computer database systems, Yahoo undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information and to utilize commercially reasonable methods to do so.   Yahoo knew, acknowledged, and agreed that the Private Information was private and confidential and would be protected as private and confidential.

59.   The law imposed an affirmative duty on Yahoo to timely discover and disclose the unauthorized access and theft of the Private Information to Plaintiff and the Class so that Plaintiff and Class Members could take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

60.   Yahoo breached its duty to discover and to notify Plaintiff and Class Members of the unauthorized access by failing to discover and notify Plaintiff and Class Members of the breach until September 2016.   To date, Yahoo has not provided sufficient information to Plaintiff and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and the Class.

61.   Yahoo also breached its duty to Plaintiff and the Class Members to adequately protect and safeguard this information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information.   Furthering its dilatory practices, Yahoo failed to provide adequate supervision and oversight of the Private Information with which it is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted a

third party to gather Plaintiff's and Class Members' Private Information, misuse the Private Information, and intentionally disclose it to others without consent.

62.     Through Yahoo's acts and omissions described in this Complaint, including Yahoo's failure to provide adequate security and its failure to protect Plaintiff's and Class Members' Private Information from being foreseeably captured, accessed, disseminated, stolen, and misused, Yahoo unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiffs and Class Members' Private Information during the time it was within Yahoo's possession or control.

63.     Further, through its failure to timely discover and provide clear notification of the Data Breach to consumers, Yahoo prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information, including other online accounts.

64.     Upon information and belief, Yahoo improperly and inadequately safeguarded the Private Information of Plaintiff and Class Members in deviation from standard industry rules, regulations, and practices at the time of the Data Breach.

65.     Yahoo's failure to take proper security measures to protect Plaintiffs and Class Members' sensitive Private Information as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiffs and Class Members' Private Information.

66.     Yahoo's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to: failing to adequately protect the Private Information; failing to conduct adequate regular security audits; failing to provide adequate and appropriate supervision of persons having access to Plaintiff's and Class Members' Private Information; and failing to provide Plaintiff and Class Members with timely and sufficient notice that their sensitive Private Information had been compromised.

67.     Neither Plaintiff nor the other Class Members contributed to the Data Breach and subsequent misuse of their Private Information as described in this Complaint.

68.     As a direct and proximate cause of Yahoo's conduct, Plaintiff and the Class suffered damages including, but not limited to: damages from identity theft, which may take

months, if not years, to discover and detect, given the far-reaching, adverse, and detrimental consequences of identity theft and loss of privacy.  The nature of other forms of economic damage and injury may take years to detect and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

## COUNT III

**Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code §17200 — Unlawful Business Practices**

(On Behalf of the Nationwide and California Classes)

69.     Plaintiff repeats and fully incorporates the allegations contained in paragraphs 1 through 48.

70.     Yahoo has violated Cal. Bus. and Prof. Code §17200 et seq. by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code §17200 with respect to the hotel services provided to the California Class.

71.     Yahoo engaged in unlawful acts and practices with respect to its services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and California Class Members' Private Information with knowledge that the information would not be adequately protected; and by storing Plaintiff's and California Class Members' Private Information in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Yahoo to take reasonable methods of safeguarding the Private Information of Plaintiff and the California Class Members.

72.     In addition, Yahoo engaged in unlawful acts and practices with respect to the its services by failing to discover and then disclose the Data Breach to California Class Members in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82. To date, Yahoo has still not provided such sufficient information to Plaintiff and the California Class Members.

73.     As a direct and proximate result of Yahoo's unlawful practices and acts, Plaintiff and the California Class Members were injured and lost money or property, including but not limited to the price received by Yahoo for the hotel services, the loss of their legally protected interest in the confidentiality and privacy of their Private Information, and additional losses described above.

74.     Yahoo knew or should have known that its computer systems and data security practices were inadequate to safeguard California Class Members' Private Information and that the risk of a data breach or theft was highly likely.  Yahoo's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the California Class.

75.     California Class Members seek relief under Cal. Bus. & Prof. Code § 17200, *et. seq.*, including, but not limited to, restitution to Plaintiff and California Class Members of money or property that Yahoo may have acquired by means of its unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Yahoo because of its unlawful and unfair business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

## COUNT IV

**Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code §17200 —
Unfair Business Practices**

(On Behalf of the Nationwide and California Classes)

76.     Plaintiff repeats and fully incorporates the allegations contained in paragraphs 1 through 48.

77.     Yahoo engaged in unfair acts and practices with respect to the hotel services by establishing the sub-standard security practices and procedures described here; by soliciting and collecting Plaintiffs and California Class Members' Private Information with knowledge that the information would not be adequately protected; and by storing Plaintiff's and California Class Members' Private Information in an unsecure electronic environment.  These

unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and California Class Members.  They were likely to deceive the public into believing their Private Information was securely stored, when it was not.  The harm these practices caused to Plaintiffs and the California Class Members outweighed their utility, if any.

78.     Yahoo engaged in unfair acts and practices with respect to the provision of its services by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect California Class Members' Private Information from further unauthorized disclosure, release, data breaches, and theft.  These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and California Class Members.  They were likely to deceive the public into believing their Private Information was securely stored, when it was not.  The harm these practices caused to Plaintiff and the California Class Members outweighed their utility, if any.

79.     As a direct and proximate result of Yahoo's acts of unfair practices and acts, Plaintiff and the California Class Members were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their Private Information, and additional losses described above.

80.     Yahoo knew or should have known that its computer systems and data security practices were inadequate to safeguard California Class Members' Private Information and that the risk of a data breach or theft was highly likely.  Yahoo's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the California Class.

81.     California Class Members seek relief under Cal. Bus. & Prof. Code § 17200, *et. seq.*, including, but not limited to, restitution to Plaintiff and California Class Members of money or property that the Yahoo may have acquired by means of its unfair business practices, restitutionary disgorgement of all profits accruing to Yahoo because of its unfair business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

## COUNT V

**Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code §17200 —
Fraudulent/Deceptive Business Practices**

(On Behalf of the Nationwide and California Classes)

82.     Plaintiff repeats and fully incorporates the allegations contained in paragraphs 1 through 48 as if fully set forth in this Count.

83.     Yahoo engaged in fraudulent and deceptive acts and practices with regard to the hotel services provided to the California Class by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard California Class Members' Private Information from unauthorized disclosure, release, data breaches, and theft; and representing and advertising that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of California Class Members' Private Information.  These representations were likely to deceive members of the public, including Plaintiff and the California Class Members, into believing their Private Information was securely stored, when it was not, and that Yahoo was complying with relevant law, when it was not.

84.     Yahoo engaged in fraudulent and deceptive acts and practices with regard to the hotel services provided to the California Class by omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for California Class Members' Private Information.  At the time that California Class members were using Yahoo's services, Yahoo failed to disclose to California Class Members that its data security systems failed to meet legal and industry standards for the protection of their Private Information. Plaintiffs would not have selected Yahoo to its services if they had known about its substandard data security practices.  These representations were likely to deceive members of the public, including Plaintiff and the California Class Members, into believing their Private Information was securely stored, when it was not, and that Yahoo was complying with relevant law and industry standards, when it was not.

85.     As a direct and proximate result of Yahoo's deceptive practices and acts, Plaintiff and the California Class Members were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their Private Information, and additional losses described above.

86.     Yahoo knew or should have known that its computer systems and data security practices were inadequate to safeguard California Class Members' Private Information and that the risk of a data breach or theft was highly likely.  Yahoo's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the California Class.

87.     California Class Members seek relief under Cal. Bus. & Prof. Code § 17200, *et. seq.*, including, but not limited to, restitution to Plaintiff and California Class Members of money or property that the Yahoo may have acquired by means of its fraudulent and deceptive business practices, restitutionary disgorgement of all profits accruing to Yahoo because of its fraudulent and deceptive business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully requests that the Court enter judgment in her favor and against Yahoo as follows:

        a.     For an Order certifying the Nationwide Class and California Class as defined here, and appointing Plaintiff and her Counsel to represent the Nationwide Class and California Class;

        b.     For equitable relief enjoining Yahoo from engaging in the wrongful conduct complained of here pertaining to the misuse and/or disclosure of Plaintiff and Class members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to the Plaintiff and Class members;

c. For equitable relief compelling Yahoo to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class members the type of PII compromised.

d. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Yahoo's wrongful conduct;

e. For an award of actual damages and compensatory damages, in an amount to be determined;

f. For an award of costs of suit and attorneys' fees, as allowable by law; and

g. Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated:  November 14, 2016

MILBERG LLP
DAVID AZAR


*/s/ David Azar*

DAVID AZAR
2850 Ocean Park Blvd. Suite 300
Santa Monica, CA 90405
Telephone: (213) 617-1200
Facsimile:  (212) 868-1229
E-mail: dazar@milberg.com

MILBERG LLP
Ariana J. Tadler
Andrei V. Rado
One Pennsylvania Plaza
New York, New York 10119
(212) 594-5300

*Attorneys for Plaintiff and the Proposed Classes*